IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| LORI ANN POLLITT and JAMES GEORGE POLLITT, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>CSN INTERNATIONAL, a California corporation, CALVARY CHAPEL OF TWIN FALLS, INC., an Idaho corporation, MICHAEL R. KESTLER, and JOHN DOES 1 through 25,<br><br>Defendants. | Case No. CV 05-524-S-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant Kestler's Motion for Partial Summary Judgment (Docket No. 43), filed August 25, 2006; Defendant CSN International's Motion for Partial Summary Judgment (Docket No. 54), filed November 9, 2006; Defendants Kestler and CSN's Motion to Strike Affidavit of Frank "Butch" Veenstra, II (Docket Nos. 73 and 79), filed, respectively, January 3 and 5, 2007. For the following reasons, the Court will grant in part and deny in part the Defendants' Motions for Partial Summary Judgment and grant in part and deny in part the Defendants' Motions to Strike.

**Memorandum Decision and Order - Page 1**

# I.
# Background

On February 7, 2006, Plaintiffs Lori Ann Pollitt ("Mrs. Pollitt") and James George Pollitt ("Mr. Pollitt") (collectively, "Plaintiffs") filed their Amended Complaint (Docket No. 13) against Defendants CSN International ("CSN"), Calvary Chapel of Twin Falls, Inc. ("Calvary Chapel"), and Michael R. Kestler ("Kestler"), alleging numerous claims including violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Idaho Human Rights Act ("IHRA"), as well as, *inter alia*, fraud, intentional interference with contract, negligence, breach of fiduciary duty, invasion of privacy, trespass, conversion, assault and battery, intentional/negligent infliction of emotional distress, tortious stalking, unjust enrichment and loss of consortium. CSN is a non-profit, Christian radio ministry and California corporation which Kestler founded. He also has served as Vice President and President of the corporation and is on the Board of Directors. Kestler is also President of and a Pastor at Calvary Chapel.

Plaintiffs allege that Kestler, as an officer of CSN and President of Calvary Chapel, sought out a sexual relationship with Mrs. Pollitt and, with CSN's and Calvary Chapel's knowledge and cooperation, lured her from her home in Dallas, Texas to Twin Falls, Idaho on pretense of offering her a job at CSN although there was no need for her services. Upon her arrival in Twin Falls, Plaintiffs assert Kestler made repeated sexual advances towards Mrs. Pollitt that she dismissed. It is further asserted that Mrs. Pollitt was subject to retaliation by being discharged from her job.

Defendant Kestler and Defendant CSN filed motions for partial summary judgment on August 25, 2006, and November 9, 2006, respectively, seeking summary judgment on Plaintiff's claims of invasion of privacy, trespass, conversion, trespass to chattel/conversion, assault,

**Memorandum Decision and Order - Page 2**

battery, and tortious stalking. Defendant Calvary Chapel has joined in these Motions. (Docket No. 67).

As to her invasion of privacy claim, Mrs. Pollitt maintains that Kestler persuaded her to disclose personal and private matters to him, including details about her marriage and sex life and that he also discussed with her personal matters and problems of his own. Kestler also discussed the two of them dating. (Affidavit of Lori Ann Pollitt in Opposition to Defendants Kestler and CSN's Motion for Partial Summary Judgment Filed on August 25 and November 9, 2006, "L. Pollitt Aff.," ¶ 5; Affidavit of Grant T. Burgoyne in Opposition to Defendants Kestler and CSN's Motions for Partial Summary Judgment Filed on August 25 and November 9, 2006, "Burgoyne Aff.," Exhibit D, Deposition of Lori Ann Pollitt, "L. Pollitt Dep.," pp. 44-47, 70-88, 107-112.) These alleged conversations occurred before and during Mrs. Pollitt's employment at CSN. Kestler denies asking her some of these questions of a personal nature. (Burgoyne Aff., Ex. B, Deposition of Michael R. Kestler, "Kestler Dep.," pp. 386-391.) As to her invasion of privacy claim and trespass claim, Plaintiff alleges that her house located on Fairway Street in Twin Falls, Idaho was broken into twice during 2004. (L. Pollitt Aff. ¶¶ 27, 28, 33.) Mrs. Pollitt stated in her deposition that she did not have "direct evidence who in the world it was" that broke into her home. (L. Pollitt Dep. 520:6-7.) As to her conversion claim, Mrs. Pollitt alleges that the second time her house was broken into, $120 in cash was stolen. (L. Pollitt Aff. ¶ 28.) In regards to her trespass to chattel/conversion claim, Mrs. Pollitt alleges that after she moved to Las Vegas in the summer of 2004 and reconciled with Mr. Pollitt, she was followed and the rear window of their car was broken out. (L. Pollitt Dep., 298:16-21.) Kestler was in Las Vegas to speak at a religious event at the time this happened. (*Id.*, Kestler Dep., 334:16-24.) Also as to

**Memorandum Decision and Order - Page 3**

this claim and her assault and battery claims, Mrs. Pollitt maintains that in March 2004 on a return trip to Twin Falls, after visiting Mr. Pollitt in Las Vegas with her kids, someone had loosened the lug nuts on her Suburban's right, front wheel causing the vehicle to shake violently. (L. Pollitt Dep., 235:9-236:4.)  As to her tortious stalking claim, Mrs. Pollitt cites to many instances of being followed while in Twin Falls and in Nevada, sometimes by members of the Calvary Chapel church and she was also informed by people involved in the church that she was being watched.[1]  Mrs. Pollitt also states she received obscene and anonymous phone calls and that many people who were affiliated with CSN or Calvary Chapel drove up and down her street honking their horns, and that a hangman's noose was made from a rope and hung in a tree in her front yard.  Jeff Pruitt, who was Mrs. Pollitt's boyfriend during her separation from her husband, was also followed and told by people within the church that he and Mrs. Pollitt were being watched.  (L. Pollitt Aff., ¶¶ 15-17, 19-27, 29-31, 34-35; Pollitt Aff., Ex. B, Transcript of CDs (phone conversation between Mrs. Pollitt and Robert Casper held on November 17, 2004), pp. 61-69; L. Pollitt Dep., pp. 144-45, 271-276, 337-355; Kestler Dep., pp. 249-251, 262-273; Affidavit of Peter Delicata, "P. Delicata Aff.," ¶¶ 5-6; Affidavit of Maxine Delicata, "M. Delicata Aff.," ¶¶ 5-6; Burgoyne Aff., Ex. E, Deposition of Jeff Pruitt on September 7, 2006, "Pruitt Dep. I," pp. 60-65; Burgoyne Aff., Ex. F., Deposition of Jeff Pruitt on October 11, 2006, "Pruitt Dep. II," pp. 4-13, 18-23, 26-50).

## II.
## Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the

---

[1] Specifically, in the transcript of her phone conversion with Bob Casper, Mr. Casper indicated that members of CSN would try to run Mrs. Pollitt out of town because of her allegations against Kestler.

**Memorandum Decision and Order - Page 4**

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250.  "When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 254.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In determining whether a material fact exists, facts and inferences must be viewed most

**Memorandum Decision and Order - Page 5**

favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371, 374 (9th Cir. 1989).

### III.
### Defendants CSN and Kestler's Motions for Partial Summary Judgment

Both Defendants CSN and Kestler have moved for partial summary judgment, with Defendant Calvary Chapel joining in the motions, on Mrs. Pollitt's claims of invasion of privacy, trespass, conversion, trespass to chattel/conversion, assault, battery and tortious stalking. The Defendants' argument with regards to all these claims except tortious stalking is that Mrs. Pollitt has no personal knowledge or direct evidence that Kestler, as an agent of CSN and Calvary Chapel, either committed any of these acts himself or directed others to commit these acts. In response to this argument, Mrs. Pollitt admits she did not personally see Kestler's tortious acts but that there is "other direct evidence, and a great deal of circumstantial evidence, of his

tortious conduct." (Plaintiff Lori Ann Pollitt's Memorandum in Response to Defendant Kestler and CSN's Motions for Partial Summary Judgment Filed on August 25 and November 9, 2005, "Pollitt's Response," p. 2 (Docket No.68).) The "circumstantial evidence" that Mrs. Pollitt points to includes her allegations that she was fired from her job after she rebuffed Kestler's romantic advances, that she was followed and watched by members of Calvary Chapel and CSN employees, that she was the object of obscene and anonymous phone calls, as well as various other allegations. Defendants urge that Plaintiff's "circumstantial evidence" fails to provide any logical link of how those events are linked to the events underlying the causes of actions.

The Court agrees with Defendants on Mrs. Pollitt's "circumstantial evidence" argument in relation to the claims of trespass, conversion, trespass to chattels/conversion, assault and battery. Mrs. Pollitt points to many isolated events that occurred and does not provide a tie between those events and Defendants, other than the ongoing disagreement regarding Mrs. Pollitt's employment. Although circumstantial evidence is sufficient evidence to prove one's claims, the mere fact that certain events happened, supported only by allegations that it was the Defendants behind the events, is not enough to survive summary judgment. The fact that other acts may have been committed by Defendants is not enough to keep the claims that have no evidentiary link to Defendants alive. The Court will now address each claim specifically.

**A.     Invasion of Privacy**

Under Idaho law, invasion of privacy occurs when "one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private concerns or affairs." *O'Neil v. Schuckardt*, 112 Idaho 472, 477, 733 P.2d 693, 698 (1987). Such intrusion must be highly offensive to a reasonable person. *Id*. There does not need to be a physical invasion but there

must be something in the nature of a prying or intrusion. *Id*. Additionally, this cause of action does not depend upon publicity given to the person whose interest or affairs are invaded. *Uranga v. Federated Publications, Inc.*, 138 Idaho 550, 553 67 P.3d 29, 32 (2003).

Mrs. Pollitt claims her privacy was invaded because Kestler persuaded her to disclose personal and private matters to him and because her house was broken into. The breaking in will be discussed under the trespass claim below. As for the other aspect of this claim, that Kestler, with the knowledge of Calvary Chapel and CSN, persuaded Mrs. Pollitt to disclose her personal and private matters to him, there are factual disputes that exist. Mrs. Pollitt claims that Kestler asked her intimate questions about her marriage and sex life, encouraged her to get divorced and disclosed personal matters of his own. Kestler does admit discussing some personal things with Mrs. Pollitt, such as her marriage problems and his, but denies the more intimate conversations of a sexual nature.

The Court must draw reasonable inferences from the facts presented in favor of the non-moving party. In doing so, the Court determines that there are genuine issues of material fact between the two parties as to what these conversations entailed and these factual issues could reasonably be resolved in favor of either party. In addition to the factual questions of what the conversations entailed, it would be a question for the jury whether these conversations would be considered "highly offensive to a reasonable person." Summary judgment on this claim is denied.

**B.     Trespass**

According to Idaho law, the requirements for a common law trespass cause of action include: "(1) an invasion (2) which interferes with the right of exclusive possession of the land,

**Memorandum Decision and Order - Page 8**

and (3) which is a direct result of some act committed by the defendant." *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1548 (D. Idaho 1992). *See also Moon v. North Idaho Farmers Ass'n*, 140 Idaho 536, 541, 96 P.3d 637, 642 (2004). Generally, an interference with one's right of "exclusive possession" involves an entry onto the land. *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1548 (D. Idaho 1992).

To support her trespass claim, Mrs. Pollitt states that her house on Fairway Street in Twin Falls, Idaho was broken into twice. No genuine issues of material fact relating to this claim have been presented so it is appropriate to resolve this claim on summary judgment. The simple fact that her house was broken into without more is not sufficient to survive summary judgment. Mere allegations are not enough to deny summary judgment to the moving party. To make a claim for trespass, a plaintiff must show the invasion that occurred was a direct result of an act by the defendant. Mrs. Pollitt has not shown that the breaking in of her home was a direct result of any act by any of the Defendants. Summary judgment will be entered in favor of the Defendants on this claim.

**C.     Conversion**

Conversion requires a "distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein." *Torix v. Allred*, 100 Idaho 905, 910, 606 P.2d 1334, 1339 (1980). Mrs. Pollitt's conversion claim stems from on the $120 in cash that was stolen when her house was broken into. As stated above in relation to the trespass claim, Mrs. Pollitt has presented no genuine issues of material fact. All she states in support of her conversion claim is that $120 was stolen from her home. There is no dispute about this fact, making this claim appropriate to be resolved at the summary judgment stage.

**Memorandum Decision and Order - Page 9**

Mrs. Pollitt does not provide any link to the Defendants besides her allegations that this was done by, or at the direction of, Kestler. Mere allegations are not sufficient to withstand summary judgment. As there is no factual dispute and Mrs. Pollitt has provided no link to the Defendants on this claim, summary judgment will be entered in favor of the Defendants.

**D.     Trespass to Chattels/Conversion**

The law stated in the above two causes of action applies to this claim as well. Mrs. Pollitt's trespass to chattel/conversion claim is based on the rear window of her and her husband's car being broken out while she was visiting Mr. Pollitt in Las Vegas. Kestler was in Las Vegas speaking at a religious event when this event occurred.

The only evidence Mrs. Pollitt has in support of this claim is the fact that the rear window of the vehicle was broken out. It is undisputed that this occurred. No evidence links the Defendants to the window being broken into, other than the fact that Kestler was in the same city at the time this occurred. As there are no factual disputes and mere allegations are not enough to survive summary judgment, summary judgment should be entered in favor of the Defendants on this claim. The other aspect of Mrs. Pollitt's trespass to chattels/conversion claim will be discussed in the next section.

**E.     Assault and Battery**

According to the Idaho Civil Jury Instructions, in order to prove assault, a plaintiff must show: (1) the defendant acted intending to cause a harmful or offensive contact with the person of the plaintiff, or an immediate fear of such contact; and (2) as a result, the plaintiff feared that such contact was imminent. IDJI2d 4.30. Battery consists of "an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive." *Neal v. Neal*,

125 Idaho 617, 622, 873 P.2d 871, 876 (1994).  The intent needed for battery is the intent to commit the act, not the intent to cause harm.  *Id*.

Mrs. Pollitt's assault and battery claims, along with her trespass to chattels/conversion claim, rest on an incident that occurred on a return trip from Las Vegas, Nevada to Twin Falls, Idaho, in which the lug nuts on Mrs. Pollitt's Suburban's right, front wheel had been loosened causing the vehicle to shake violently.  No genuine issues of material fact exist on these claims and they are appropriate for summary judgment.  There is no evidence showing that any of the Defendants loosened the lug nuts or directed someone else to do so.  Without anything to link Defendants to these events and there being no genuine issues of material fact, summary judgment for Defendants is appropriate.

**F.     Tortious Stalking**

All parties agree that Idaho has not recognized the tort of stalking.  Defendants urge that since Idaho has not recognized this cause of action, Mrs. Pollitt's claim must fail.  They also argue that even if the Court finds such a cause of action, it must still fail because Mrs. Pollitt has set forth no evidence that Kestler, or others at his direction, undertook any action that could constitute "stalking."  Mrs. Pollitt maintains in response that pursuant to principles in the Restatement (Second) of Torts, violation of Idaho's criminal stalking statute (I.C. §§ 18-7906-7906) creates tort liability.[2]  Restatement (Second) of Torts § 874A states:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the

---

[2]  I.C. § 18-7906 defines the crime of stalking in the second degree as occurring when "the person knowingly and maliciously: (a) Engages in a course of conduct that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress; or (b) Engages in a course of conduct such as would cause a reasonable person to be in fear of death or physical injury, or in fear of the death or physical injury of a family or household member."

**Memorandum Decision and Order - Page 11**

> court may, if it determines that the remedy is appropriate in furtherance of the purposes of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action, or a new cause of action analogous to an existing tort action.

The Idaho Supreme Court has recognized these principles set forth in this Restatement section. *See Brock v. Board of Directors, Independent School Dist. No. 1*, 134 Idaho 520, 522, 5 P.3d 981, 983 (2000). In discussing these principles from the Restatement, the Idaho Supreme Court has also stated: "In the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate." *Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 176, 923 P.2d 416, 421 (1996). When the statute is silent, "courts may recognize a private right only when it is necessary to assure effectiveness of the statute." *Foster v. Shore Club Lodge, Inc.*, 127 Idaho 921, 926, 90 P.2d 1228, 1233 (1995). In none of these cases cited by Mrs. Pollitt has the Idaho Supreme Court actually created a new private cause of action based on an existing statute. However, Mrs. Pollitt urges that although none of these cases recognized tort remedies for statutory violations, the statutes in those cases involved protecting the general public, whereas the criminal stalking statutes are designed to protect a special class of persons and a tort remedy would further the purpose of these statutes. Additionally, Mrs. Pollitt notes that the *Brock* and *Foster* courts recognized that civil and/or administrative remedies already existed so tort remedies were not necessary.

      In reply, Defendant Kestler points out that Mrs. Pollitt has failed to establish that Kestler's actions constituted a violation of I.C. §§ 18-7905-7906 and also failed to establish what the elements of a tortious stalking claim are and how those elements would be satisfied in this case. Additionally, Defendant Kestler maintains that even if such a cause of action exists, Mrs. Pollitt has failed to provide factual support of such a claim because she has failed to provide a

**Memorandum Decision and Order - Page 12**

link that Kestler directed, or was personally involved with, any of these activities where Mrs. Pollitt was followed, watched, etc.  Defendant CSN maintains that tortious stalking is not a viable cause of action in Idaho and that Mrs. Pollitt has not provided any relevant authority to support creating a new cause of action.

The Court notes from its examination of the law from other jurisdictions, that some states recognize a statutory tort of stalking and other states have specifically rejected creating a tort of stalking.  For example, both California and Texas recognize a tort or civil action for stalking. *See* CAL. CIV. CODE § 1708.7; TEX. CIV PRAC. & REM. §§ 85.001-.005.  Other states, such as Georgia and Washington, which have statutes prohibiting stalking, have refused to create a private cause of action.  *See Troncalli v. Jones*, 514 S.E.2d 478, 481 (Ga. Ct. App. 1999) ("Although OCGA § 16-5-90 [defining the offense of stalking] establishes the public policy of the state, nothing in its provisions creates a private cause of action in tort in favor of the victim"); *Sanai v. Sanai*, 2005 WL 1172437 at *18 (W.D. Wash. 2005) (Washington statute providing victims with a method of obtaining civil anti-harassment protection orders does not create a private civil action for harassment).

The Court does not find it appropriate to create a new cause of action for tortious stalking in this case.  The case does not rise or fall on this one claim.  Even with this cause of action dismissed, the case will still proceed.  Additionally, the Court notes that the invasion of privacy claim might be broad enough to encompass Mrs. Pollitt's allegations in support of her "tortious stalking" claim.  The Idaho Supreme Court has recognized the principle described by the Restatement (Second) of Torts that a new cause of action can be created if it furthers the purposes of the legislation.  However, Mrs. Pollitt did not cite to any legislative history which

**Memorandum Decision and Order - Page 13**

would support her position of what the Idaho legislature had mind when it enacted the criminal stalking statute and that creating a private right of action would further such purposes.

Without showing how a private cause of action would further a legislative purpose behind the criminal stalking statute and the fact that Mrs. Pollitt may be able to bring her "stalking" allegations into her invasion of privacy claim, the Court will not create a new "tortious stalking" civil cause of action and will grant summary judgment to Defendants on this claim. Future development of the law in this area is best left to the Idaho courts in a more appropriate case.

## IV.
## Defendants' Motion to Strike

Defendants have moved to strike the affidavit of Frank "Butch" Veenstra, II and portions of Mrs. Pollitt's affidavit. Defendant Kestler argues that the Veenstra Affidavit should be stricken because it is vague, ambiguous, not relevant to any of Plaintiffs' claims, highly circumstantial and otherwise not admissible as evidence. Kestler urges that the Veenstra Affidavit does not set forth any facts supporting Mrs. Pollitt's allegations that Kestler committed tortious acts against her but rather alleges that Mr. Veenstra left Calvary Chapel, where he was an Elder, because of Kestler's "issues with women" and after he left, his mailbox was tampered with and a dead bird left inside it. Affidavit of Frank "Butch" Veenstra, II, "Veenstra Aff." Kestler argues that these allegations are irrelevant to the issues raised by this partial summary judgment motion. Additionally, Kestler maintains that if the Court finds the Veenstra Affidavit to be relevant, it is inadmissible under Fed. R. Evid. 404(b) which prohibits evidence of prior bad acts to prove the character of a person in order to show that the person acted in conformity therewith. Kestler also submits that the Veenstra Affidavit is vague and ambiguous as to

**Memorandum Decision and Order - Page 14**

identity, time and circumstance because no specific facts about Kestler's "issues with women" are given nor is there any evidence of who tampered with Veenstra's mailbox. Additionally, as to the statement attributed to Kestler that he could only be pushed so far before he will explode and get even, Kestler argues that there is no context as to the circumstances or nature of the conversation and there is no indication when the statement was made. Both Defendants also maintain that the Veenstra Affidavit contains conclusory statements.

Plaintiffs argue that the Veenstra Affidavit contains relevant information on the issues of "motive,...intent,...plan, identity and absence of mistake or accident" as permitted under Fed. R. Evid. 404(b). Plaintiffs also maintain that Veenstra's statement that he was leaving Calvary Chapel because Kestler had issues with women is not offered to show that Kestler did in fact have "issues with women," but rather to show that Veenstra told Kestler this and later experienced retaliation. Additionally, Plaintiffs urge that the Veenstra Affidavit is not vague and ambiguous, does not contain conclusory statements and that Defendants supply no authority in support of this argument.

Defendant Kestler also urges that Paragraph 17 of Mrs. Pollitt's affidavit should be stricken because it is inadmissible hearsay. This paragraph contains an assertion that Calvary Chapel's Interim Pastor, Kelly Hassani, told Mrs. Pollitt that both her and Mr. Pruitt and her residence were being watched. Defendant CSN moves to strike Paragraph 17 and also Paragraphs 9, 10, 11, 12, 14 and 15 because they are generalized, conclusory statements.

Plaintiffs argue that the reference to Kelly Hassani's statement in Mrs. Pollitt's Affidavit is a party opponent admission and admissible under Fed. R. Evid. 801(d)(2)(A), (D) because Mr. Hassani was Calvary Chapel's Interim Pastor at the time his statement was made and Calvary

Chapel is a party opponent in this case and in these motions for partial summary judgment. Additionally, Plaintiffs point out that even if Paragraph 17 of Mrs. Pollitt's Affidavit is stricken, the same evidence is contained in the Jeff Pruitt's deposition which Defendants have not moved to strike. As to Defendant CSN's objections to Paragraphs 9-12 and 14-15 of Mrs. Pollitt's Affidavit, Plaintiffs submit that her statements are not generalized and conclusory but rather contain specific statements regarding specific events that Mrs. Pollitt directly perceived.

**A.     Discussion**

Federal Rule of Civil Procedure 56(e) states, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Plaintiff is entitled to submit affidavits on his behalf in an attempt to defeat a motion for summary judgment; in fact, he is compelled to do so by Fed. R. Civ. P. 56(e) in order to be successful. *See Celotex Corp. v. Citrate*, 477 U.S. 317 (1986), and *British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

Rule 56(e) requires that affidavits filed in connection with motions for summary judgment be made on personal knowledge. *DePinto v. Provident Security Life Ins. Co.*, 374 F.3d 50, 55 (9th Cir. 1967). As such, hearsay testimony and opinion testimony that would not be admissible if testified to at trial would not be properly set forth in such an affidavit. *Id*. Facts alleged on understanding, such on belief or on information and belief, are not sufficient to create a genuine issue of fact. *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978). A motion for summary judgment will not be defeated by mere conclusory allegations

**Memorandum Decision and Order - Page 16**

unsupported by factual data.  *Seattle-First Nat'l Bank v. United States*, 653 F.2d 1293, 1299 (9th Cir. 1981).

> Both Plaintiffs and Defendants rely on Fed. R. Evid. 404(b) which states:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...

Party-opponent admissions are governed by Fed. R. Evid. 801(d)(2) which states a statement is not hearsay if: "The statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or...(D) a statement by the party's agent concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

As to Defendants' "prior bad acts" argument, the affidavit does not actually state that it was Kestler who tampered with Veenstra's mailbox after he left Calvary Chapel, although that is what is implied by the statements. Additionally, even if these statements did constitute evidence of Kestler's prior bad acts, they could come be admissible to show motive or identity under Fed. R. Evid. 404(b).  However, even with consideration of the Veenstra Affidavit, the evidence was not strong enough to survive summary judgment on six of the seven claims that Defendants sought summary judgment on.  Also, this evidence is not relevant to the invasion of privacy claim that did survive summary judgment.

As to Mrs. Pollitt's Affidavit, Paragraphs 9-12 and 14-15 are admissible.  In these paragraphs, she recounts events that happened to her while she worked at CSN. She does not draw any conclusions as Defendants argue.  As to Paragraph 17, this is a hearsay statement that does not fall within the party-opponent exception despite the fact that Mr. Hassani worked for

**Memorandum Decision and Order - Page 17**

Calvary Chapel at the time he made the statement, as it does not seem to concern matters with the scope of his employment. This statement will be stricken.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)  Defendant Kestler's Motion for Partial Summary Judgment (Docket No. 43), filed August 25, 2006 be granted in part and denied in part.

2)  Defendant CSN International's Motion for Partial Summary Judgment (Docket No. 54), filed November 9, 2006 be granted in part and denied in part.

3)  Defendant Kestler's Motion to Strike Affidavit of Frank "Butch" Veenstra, II (Docket No. 73), filed January 3, 2007 be granted in part and denied in part.

4)  Defendant CSN International's Motion to Strike Affidavit of Frank "Butch" Veenstra, II (Docket No. 79), filed January 5, 2007 be granted in part and denied in part.

DATED: January 29, 2007

Honorable Mikel H. Williams
United States Magistrate Judge